George **BARTHOLOMEW** et al.,
Plaintiffs, Appellants,

v.

**APPALACHIAN INSURANCE COMPA-NY** et al., Defendants, Appellees.

No. 81–1028.

United States Court of Appeals,
First Circuit.

Argued June 5, 1981.

Decided July 28, 1981.

Edward W. Moses, Providence, R. I., with whom Harry W. Asquith, and Asquith, Wiley & Ryan, Providence, R. I., were on brief, for plaintiffs, appellants.

Peter S. Haydon, Providence, R. I., with whom Kenneth P. Borden, and Higgins,

Cavanagh & Cooney, Providence, R. I., were on brief, for defendants, appellees.

Before COFFIN, Chief Judge, ALDRICH and BREYER, Circuit Judges.

ALDRICH, Senior Circuit Judge.

Robo Wash, Inc., and New England Robo Wash, Inc., the manufacturer and distributor, respectively, collectively hereinafter Robo, supplied certain professional car wash equipment, known as a Spyder unit, to plaintiffs, Bartholomew and another, in 1972. On plaintiffs' facility opening for business it immediately began to suffer difficulties. Parts broke down regularly and proved difficult or impossible to replace, leaving the equipment inoperable for substantial periods of time. Even worse, under the guise of cleaning customers' cars, the Spyder sometimes sprayed them with oil, broke their mirrors and antennas, and folded their license plates. In April, 1973, Bartholomew told Robo that "this Spyder has got to be the most worthless piece of junk that I've ever seen."

Robo sought to remedy the defects, but was unsuccessful; its last attempt occurred prior to plaintiffs' instituting suit against it in February, 1974. By that time, indeed before, plaintiffs had realized the situation was hopeless.

Q. "Would it be a fair statement to say that you and your partner . . . came to this realization there was nothing anyone could do prior to the time you filed your original suit in Federal Court?"

A. "That is correct."

In spite of plaintiffs' realization that there was nothing anyone could do "so that the car wash could operate properly," they persisted in using the equipment, following suit, until September, 1974. Thereafter they amended their complaint, seeking damages from Robo until that date, and the parties entered into a consent judgment, Robo admitting damages in plaintiffs' favor in the amount of $300,000. Robo then assigned to plaintiffs its rights against four companies that insured it, the present defendants, appellees, and two others who settled out.

Defendant Appalachian Insurance Company's policy[1] insured Robo against loss "which the insured may sustain by reason of liability imposed upon the insured by law. . . .

(1) For damages because of injury to or destruction of tangible property including loss of use resulting therefrom caused by an occurrence.

. . . .

"'Occurrence' means an accident, including continuous or repeated exposure to conditions, which results in personal injury or property damage neither expected nor intended from the standpoint of the insured."

This insurance, however, did not take effect until June 1, 1974. Not unnaturally, on learning plaintiffs were claiming that they had assumed the loss, defendants protested that the "occurrence" resulting in Robo's liability had occurred prior to that date.

The facts herein stated having been stipulated, both sides moved for summary judgment. In an extensive opinion, 502 F.Supp. 246, the district court granted defendants' motion. Plaintiffs appeal. Briefly, their contention is that since they continued to suffer damages into the policy period, it was at least a question of fact whether the "occurrence" occurred after the insurance commenced. The district court held that as matter of law it did not. We agree.

Strictly, the act for which a manufacturer is liable is the initial supplying of defective equipment. However, the cause of action is held to arise when the defect takes effect or is discovered. The parties agree to this general principle. Thus, when a plaintiff, some time after having purchased a ladder fell therefrom and was injured, thereby discovering an alleged defect, it was the manufacturer's insurer at that date, if any, that was responsible, and not the insurer at the date of the sale. *Landerman v. United States F. & G. Co.*, (Super.

---

1. The other defendant's policy is in essence the same.

Ct.1964) 25 Conn.Supp. 297, 203 A.2d 150; Annot. 57 A.L.R.2d 1385 (1958). This is not to say, however, that if the plaintiff had continued to use the ladder, and was injured again at a later date, when there was a third insurer, that that company would be liable. The "occurrence" is the establishing event. *United States F. & G. Co. v. American Ins. Co.*, (Ct.App.1976) 169 Ind.App. 1, 345 N.E.2d 267. We agree with the dissenting opinion of Clark, J., in *Export S. S. Corp. v. American Ins. Co.*, 2 Cir., 1939, 106 F.2d 9, 12, *cert. denied*, 309 U.S. 686, 60 S.Ct. 809, 84 L.Ed. 1029, rather than the majority view. At the risk of appearing pedantic, the insurance is against an occurrence, not a reoccurrence, particularly a deliberate one.

The concept of insurance is that the parties, in effect, wager against the occurrence or non-occurrence of a specified event; the carrier insures against a risk, not a certainty. Thus a homeowner could not insure his house against flood damage when the rising waters were already in his front yard. *Summers v. Harris*, 5 Cir., 1978, 573 F.2d 869.[2] In the case at bar Robo's defects were fully known, indeed sued for, before the policies took effect. We can only construe the present action as an attempt to "job" the defendants.[3]

*Affirmed.*

---

**2.** *Cf. Hooper v. Robinson*, 1878, 98 U.S. 528, 537, 25 L.Ed. 219, where parties insured an absent ship "lost or not lost," the validity of the coverage being based upon good faith ignorance of the true facts in those days of poor communication. Conceivably the facts in *Export S. S. Corp.* could be said to fall within that principle.

**3.** Plaintiffs' extended argument that the insurers' responsibility could be established by the consent judgment to which it was not a party is equally fallacious. *See Evans v. Employers Mut. Ins. Co.*, D.Alaska, 1975, 391 F.Supp. 1230, 1232.