ILLINOIS TOOL WORKS, INC., Plaintiff-Appellant, v. SIERRACIN CORPORATION, Defendant-Appellee.

First District (1st Division)   No. 84—1457

Opinion filed June 3, 1985.

Thomas Campbell and Michael P. Padden, both of Gardner, Carton & Douglas, of Chicago (Arthur M. Wright, of counsel), for appellant.

Connelly & Ahern, of Chicago, for appellee.

JUSTICE BUCKLEY delivered the opinion of the court:

Plaintiff Illinois Tool Works, Inc. (ITW), brought an action in the circuit court of Cook County seeking a declaratory judgment that a contract for the purchase of goods from defendant Sierracin Corporation (Sierracin) was voidable by reason of duress. Upon Sierracin's motion, the trial court dismissed the action on the basis of *forum non conveniens*. The court subsequently denied ITW's motion to reconsider that ruling, and ITW now appeals. For the following reasons, we affirm.

The record reveals that ITW is a Delaware corporation with its principal place of business in Illinois. Defendant Sierracin is a Delaware corporation with its principal place of business in California. Sierracin is neither incorporated in Illinois, nor is it licensed to do business in Illinois. On or about March 30, 1982, the parties entered into a contract whereby Sierracin agreed to supply certain "flex circuits" to ITW. The flex circuits were used by ITW to produce an electric switch for Eastman Kodak Company (Kodak). Kodak utilized the switches in its new disc cameras. ITW was Kodak's sole supplier of the switches. Sierracin, in turn, was ITW's sole supplier of the flex circuits necessary to produce the switches.

The initial contract between ITW and Sierracin provided for the purchase of 1,000,000 circuits at a price of $.72 per unit. Shortly thereafter, the quantity of switches was increased to 1,510,000, but the $.72 price per unit remained unchanged.

On September 30, 1982, a meeting was held at the Chicago O'Hare Hilton between representatives of ITW and Sierracin. Attending the meeting were: (1) Robert Brannon, ITW's representative; (2) Andy Loughlin, Sierracin's local sales representative; and (3) Joseph Rivlin, the president of Sierracin. ITW alleges that at this meeting Rivlin threatened that Sierracin would cut off all further shipments of the flex circuits unless ITW agree to a higher price schedule. Specifically, ITW alleges that Sierracin demanded $1.25 per unit for the next 300,000 circuits, $.98 per unit for the following 300,000 circuits, and $.85 per unit for all circuits supplied thereafter.

ITW further alleges that during the period immediately prior to the meeting Kodak told ITW that it was losing sales because of a shortage of electrical switches and pressured ITW to increase produc-

tion. ITW maintains that Sierracin had knowledge of the pressure from Kodak and therefore demanded the higher prices.

On October 1, 1982, the day after the O'Hare Hilton meeting, ITW mailed to Sierracin a purchase order for 300,000 flex circuits at $1.25 per unit. ITW received the circuits under this purchase order, but later refused to pay the $1.25 per unit price. Instead, ITW sent Sierracin a check, calculated on the basis of a $.72 per unit price, as full payment for the goods. Sierracin threatened to bring suit against ITW unless it received payment based on the $1.25 per unit price.

On December 23, 1983, ITW filed an action seeking a judgment declaring, *inter alia*, (1) that it acted under duress in capitulating to the $1.25 per unit price, and (2) that any agreement under these circumstances was voidable. In response, counsel for Sierracin filed a special and limited appearance for the purpose of moving that the circuit court decline jurisdiction and dismiss the action on the basis of *forum non conveniens*. In its motion and supporting documentation, Sierracin denied threatening to discontinue production of the flex circuits unless ITW agreed to the higher price. Sierracin also asserted that the underlying issue in this case concerned more than what transpired at the O'Hare Hilton meeting, but rather involved numerous persons, meetings, and activities in California which led to and followed the entry of the contract which ITW now seeks to void. Sierracin concluded in its motion that California, and not Illinois, is the more appropriate forum in which to litigate this matter.

Following a hearing, the trial court granted Sierracin's motion to dismiss on the basis of *forum non conveniens*. The court reasoned that Joseph Rivlin was a crucial witness in this case and would not be subject to compulsory process if the case were litigated in Illinois. Rivlin resides in California, is no longer employed by Sierracin and in fact left Sierracin on unpleasant terms.

ITW filed a motion to reconsider the dismissal. Attached to the motion was an affidavit by Rivlin indicating that he "would be willing to appear in Illinois" to testify in the matter if his expenses were reimbursed. The trial court, after again hearing arguments, ultimately denied the motion to reconsider and allowed its prior ruling on the motion *forum non conveniens* to stand.

■ ■ On appeal, the issue presented is whether the trial court correctly dismissed the instant action on the basis of *forum non conveniens*.

*Forum non conveniens* is a doctrine founded in consideration of fundamental fairness and sensible and effective judicial administration. (*Adkins v. Chicago, Rock Island & Pacific R.R. Co.* (1973), 54

Ill. 2d 511, 514, 301 N.E.2d 729.) This doctrine assumes the existence of at least two forums in which the defendant is amenable to jurisdiction. (*Jones v. Searle Laboratories* (1982), 93 Ill. 2d 366, 371, 444 N.E.2d 157.) In applying the doctrine, the inquiry therefore focuses upon the relative convenience and fairness of the forums having jurisdiction. *Foster v. Chicago & North Western Transportation Co.* (1984), 102 Ill. 2d 378, 382, 466 N.E.2d 198.

The relevant factors, both private and public, which must be considered in determining the most convenient forum were set out by the United States Supreme Court in *Gulf Oil Corp. v. Gilbert* (1947), 330 U.S. 501, 91 L. Ed. 1055, 67 S. Ct. 839. The private interest factors include the ease of access to sources of proof, the availability of compulsory process to secure the attendance of unwilling witnesses, the cost of obtaining the attendance of willing witnesses, the possibility of a view of the site of the occurrence and the convenience of the parties. Factors of public interest to be considered are the imposition of jury service on the residents of the community, the congestion of the court dockets, the need to apply the law of a foreign jurisdiction and the interest in having local controversies decided at home. 330 U.S. 501, 508-09, 91 L. Ed. 1055, 1062-63, 67 S. Ct. 839, 843.

After balancing the foregoing factors, the court may decline to exercise jurisdiction when it finds that another forum can better serve the ends of justice and the convenience of the parties. (*Adkins v. Chicago, Rock Island & Pacific R.R. Co.* (1973), 54 Ill. 2d 511, 514, 301 N.E.2d 729.) The trial court has broad discretion in deciding whether a case should be dismissed based upon *forum non conveniens*. (*Moore v. Chicago & North Western Transportation Co.* (1983), 99 Ill. 2d 73, 77, 457 N.E.2d 417.) On review, the only consideration is whether the trial court's decision constitutes an abuse of discretion, and not whether the reviewing court would have resolved the issue in the same manner as the trial court. 99 Ill. 2d 73, 83.

■ In the case before us, we cannot conclude that the trial court abused its discretion. The trial court found that Rivlin was a "key figure" and a "crucial witness" in this case. We agree with this finding. It is Sierracin's defense in this suit that, contrary to ITW's assertion, Rivlin at no time threatened to stop production of the flex circuits unless ITW agreed to the higher price. The record indicates that Rivlin resides in California and is no longer president of Sierracin, having separated from the company on unfriendly terms. As the trial court found, if the trial of this cause were held in Illinois, there would be no compulsory process over Rivlin.

The fact that Rivlin gave an affidavit indicating that he "would be

willing to appear in Illinois to testify in this matter" is no guarantee that he in fact will be available in Illinois when the matter comes to trial. Rivlin is not within the jurisdiction of the circuit court of Cook County, he is not amenable to its process and his affidavit does not alter the circuit court's inability to force him to appear or to force sanctions against him for his failure to appear. In the event that Rivlin changes his mind about travelling to Illinois for trial, the circuit court would have no authority over him. Although defendant could depose Rivlin, depositions have been deemed an inadequate substitute for live testimony. *Jones v. Searle Laboratories* (1982), 93 Ill. 2d 366, 374, 444 N.E.2d 157.

ITW argues that the superior forum for this litigation is Illinois because three other important witnesses reside in Illinois, namely, Robert Brannon, Andy Loughlin and Art Dannenberg. This argument is unpersuasive. Brannon was ITW's representative at the O'Hare Hilton meeting and is still in its employ. He is expected to testify at trial that Rivlin threatened to stop production of the flex circuits unless ITW agreed to pay a higher price. Although Brannon is important to this case, he is available to ITW as its employee regardless of whether the case is tried in Illinois or California. See *Jones v. Searle Laboratories* (1982), 93 Ill. 2d 366, 374, 444 N.E.2d 157; *W.R. Grace & Co. v. Beker Industries, Inc.* (1984), 128 Ill. App. 3d 215, 221, 470 N.E.2d 577; 87 Ill. 2d R. 237(b).

While ITW asserts that Loughlin and Dannenberg would not be subject to compulsory process in Illinois, neither is indispensable to this litigation. Loughlin was the third person present at the meeting at the O'Hare Hilton. At the time, he was employed by Thermek, Inc., which was the independent contractor sales representative of Sierracin in the Midwest. Loughlin currently is not employed by Thermek or Sierracin and is believed to reside in Illinois. His testimony, however, would merely corroborate or rebut the accounts given at trial by Rivlin and Brannon as to what transpired at the meeting. Moreover, the evidence before us at this point indicates that Loughlin's testimony would be favorable to Sierracin.[1]

Dannenberg is presently employed by Thermek and is an Illinois resident. According to ITW, Dannenberg acted as Sierracin's representative in the flex circuit contracts and was in frequent contact with the parties. Dannenberg, however, did not attend the O'Hare

---

[1]The affidavit of Sierracin's California legal counsel, which is part of the record before us, recites that Loughlin told him that Rivlin made no threats of any nature at the O'Hare Hilton meeting.

Hilton meeting. As such, any testimony he may give would simply be circumstantial evidence of the general relationship between Sierracin and ITW.

The other private interest factors to be considered are neutral or irrelevant in this case. We believe, however, that the considerations discussed above strongly favor the trial of this cause in California.

■ In terms of public interest factors, the need to apply foreign law has frequently been deemed an important factor favoring dismissal of the suit. (*Jones v. Searle Laboratories* (1982), 93 Ill. 2d 366, 375, 444 N.E.2d 157.) California law will govern the present contract dispute under the "most significant contacts" test of the Restatement (Second) of Conflict of Laws sec. 188(1) (1971). The second Restatement provides that where, as here, there is an absence of an effective choice by the parties as to which law should govern the contract, the rights of the parties with respect to an issue in a contract are determined by the local law of the State which, with respect to that issue, has the most significant relationship to the transaction and parties. Contacts to be evaluated in connection with applying this principle include the place of contracting, negotiation, performance, location of the subject matter of the contract, and the domicile, residence, place of incorporation and business of the parties. (*Champagnie v. W.E. O'Neil Construction Co.* (1979), 77 Ill. App. 3d 136, 145, 395 N.E.2d 990.) The place of contracting is the jurisdiction wherein is accomplished the last act necessary to give validity to the contract. (*Youngstown Sheet & Tube Co. v. Industrial Com.* (1980), 79 Ill. 2d 425, 433, 404 N.E.2d 253.) Here, California is the place of contracting since the contract was made when ITW mailed purchase orders from Illinois which were accepted by Sierracin in California. The subject matter of the contract was located in California, and many of the negotiations leading up to the subject contract occurred in California. The performance of the contract, namely the manufacture and delivery of the flex circuits, took place in California; the circuits were manufactured entirely at Sierracin's plant in California, and the contract specified that the circuits were to be shipped "F.O.B.—Your Plant." (See *Sparta Produce Exchange v. Wilson & Co.* (1921), 223 Ill. App. 126, 129-30; Ill. Rev. Stat. 1983, ch. 26, pars. 2—319, 2—401.) Finally, Sierracin's principal place of business is in California. Under these circumstances, California law is controlling.

■ Another public interest factor concerns the condition of the court docket. Our supreme court has repeatedly taken notice of the congested dockets of the circuit court of Cook County. (*Jones v. Searle Laboratories* (1982), 93 Ill. 2d 366, 375, 444 N.E.2d 157; *Peo-*

*ple ex rel. Compagnie Nationale Air France v. Giliberto* (1978), 74 Ill. 2d 90, 112-13, 383 N.E.2d 977, *cert. denied* (1979), 441 U.S. 932, 60 L. Ed. 2d 660, 99 S. Ct. 2052.) Most recently, in *Satkowiak v. Chesapeake & Ohio Ry. Co.* (1985), 106 Ill. 2d 224, 231, the supreme court observed that "[t]he docket of the circuit court of Cook County is still crowded to the point where congestion is of great concern." We see no reason to burden the judicial system of Cook County by allowing this case to be tried in that county when the factors relating to fairness establish that California is the superior forum.

■ ITW argues that its choice of Illinois as a forum should be given paramount consideration because its principal place of business is in Illinois. It is true that courts have recognized that deference should be paid to the plaintiff's choice of forum, where, as here, plaintiff is not foreign to the chosen forum. (*Wieser v. Missouri Pacific R.R. Co.* (1983), 98 Ill. 2d 359, 456 N.E.2d 98.) However, it is established that a resident plaintiff's choice of forum can be disturbed where, as in the present case, the balance of relevant factors strongly favors the defendant. (*Moore v. Chicago & North Western Transportation Co.* (1983), 99 Ill. 2d 73, 457 N.E.2d 417.) In *Moore*, an Illinois resident plaintiff was denied access to the Illinois court where most of the other significant factors favored litigation in another forum. 99 Ill. 2d 73, 79.

■ Finally, ITW contends that the trial court based its decision solely on the unavailability of Rivlin to testify and failed to consider all factors involved in the disposition of a motion *forum non conveniens*. Although the court premised its ruling on Rivlin's unavailability to testify in Illinois, this does not necessarily mean that the court failed to consider any other factors, arguments or evidence presented. Moreover, it is axiomatic that a reviewing court may affirm an otherwise correct trial court judgment on any basis appearing in the record. *Best Coin-Op, Inc. v. Old Willow Falls Condominium Association* (1983), 120 Ill. App. 3d 830, 834, 458 N.E.2d 998.

As noted previously, the trial court has broad discretion in ruling on a motion *forum non conveniens*. Under the circumstances of this case, we cannot conclude that there was an abuse of discretion.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

CAMPBELL and O'CONNOR, JJ., concur.