792 F.Supp. 63 (1992)
John L. MAY, Archbishop of St. Louis, Plaintiff,
v.
MARYLAND CASUALTY CORPORATION, et al., Defendants.
No. 91-0155C(6).
United States District Court, E.D. Missouri, E.D.
June 5, 1992.
*64 Roger Edgar, Lawrence S. Denk and Bernard C. Huger, Greensfelder Hemker & Gale, St. Louis, Mo., for plaintiff.
Rebecca R. Haller, Hinshaw & Culbertson, Chicago, Ill., Jeffrey Glass, Thomas Hamilton, Peter Maginot, Hinshaw & Culbertson, St. Louis, Mo., for Maryland Cas. Corp.
Frank Gundlach, Armstrong, Teasdale, Schafly, Davis, St. Louis, Mo., Richard F. Johnson, Lord, Bissell & Brook, Chicago, Ill., for defts. Alan Godfrey Lee a rep. of all defts. other than Maryland.

MEMORANDUM OPINION
GUNN, District Judge.
This action is brought by the Archdiocese of St. Louis against their insurers Maryland Casualty Company (Maryland) and insurance underwriters (designated collectively as Lloyd's). The Archdiocese seeks reimbursement of $321,477.67, plus prejudgment interest, paid by the Archdiocese in settlement and in the defense of two separate claims filed by students who were sexually abused by Tyrone McNairy, a volunteer basketball coach at schools operated by the Archdiocese. The claims will be identified as the "Phillips claim" and the "Umbach claim."
Lloyd's contends that the first instance of abuse in each case occurred prior to its policy period. Maryland asserts that the abuse did not occur during its policy period or occurred only during a portion of its policy period; hence, any of its responsibility is only proportionate. Maryland further contends that the Archdiocese either failed to give timely notice of the suits or failed properly to tender the Umbach claim for defense.
The Archdiocese requests money damages as a result of each carrier breaching its respective covenant to defend, or in the alternative, to indemnify by declining to participate in the settlement of the claims. It also seeks to recover from Maryland the amounts paid by it for attorneys' fees incurred in the defense of the two actions.
Maryland has filed a counterclaim against the Archdiocese seeking declaratory relief to the effect that it owed no duty to defend or indemnify in either case. Lloyd's has filed a counterclaim against the Archdiocese for the same declaratory relief and against Maryland for declaratory relief to the effect that Maryland, not Lloyd's, is responsible for the payment of the settlements in the cases filed by the students.
At the close of the presentation of the evidence in this Court-tried case, it occurred to the Court, somewhat naively, that the parties could stipulate concisely what the evidence had shown and what the specific issues were for the Court to resolve. The Court acknowledges that the parties have worked diligently to follow this directive. But the Court was far too sanguine in its belief that the facts and issues could be stated compendiously. Zealous advocates are all too wont to be certain that there is no chance from their perspective that some fact bearing on the case is omitted. Hence, the parties have submitted an unquestionably all comprehensive fifty-one page "Joint Post Trial Submission" which is part of the Court's file and which the Court will refer to from time to time.
The Court finds it necessary to indite its own findings of fact on which to base its conclusions of law, as required by Rule 52 of the Federal Rules of Civil Procedure. Fed.R.Civ.P. 52.
This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1332.
The basic precepts which govern the Court are expressed in Nat. Union Fire Ins. Co. v. Structural Sys. Technology, Inc., 964 F.2d 759 (8th Cir.1992) and are as follows:
First, an insurer's duty to defend is determined by comparing the policy provisions with the allegations charging the insured with liability. Howard v. Russell Stover Candies, Inc., 649 F.2d 620, 624 (8th Cir.1981). An insurer's duty to defend is broader than the duty to indemnify. Id. at 625. There is a duty to defend if the complaint alleges facts which state a claim potentially within policy coverage. Id. at 624. Second, in *65 Missouri the insured has the burden of proving that the loss and damages claimed are covered by the insuring provisions, and the insurer has the burden of proving the applicability of any exclusion upon which it relies. Taylor-Morley-Simon, Inc. v. Michigan Mut. Ins. Co., 645 F.Supp. 596, 599 (E.D.Mo.1986) (citing Grossman Iron & Steel Co. v. Bituminous Cas. Corp., 558 S.W.2d 255, 259-60 (Mo.Ct.App.1977), aff'd, 822 F.2d 1093 (8th Cir.1987)).
The cynosure of this action is the settlement of two suits arising out of a series of pedophilic offenses against each of the two victims. The parties seem to agree that the so-called "first encounter" theory of coverage applies. That is, the insurer at risk at the time of the first encounter with each victim is liable for all injuries resulting from the violation of that victim even though subsequent molestations occurred beyond the policy term. The basis for such theory is that the injury occurred at the time of the first encounter, albeit that there have been subsequent violations to the victim. Interstate Fire & Cas. Co. v. Archdiocese of Portland, 747 F.Supp. 618 (D.Or.1990) is completely felicitous in this regard, including the factual circumstances.[1] This Court accepts the first encounter doctrine as applied in Interstate Fire & Cas. Co. as wholly reasonable and appropriate.
Resolution of the first encounter question is all important to the denouement of the insurance coverage issue. Maryland's coverage is for any occurrence before April 1, 1982. Lloyd's coverage is for any occurrence after April 1, 1982. This melds into the factual dispute as to when the first offense took place as to each of the victims  whether before or after April 1, 1982.
The time of the first libidinous conduct by the offender McNairy centers on a certain basketball tourney held in Blue Springs, Missouri, on March 30, 1982.
Each March from 1980 to 1986, the Blue Springs, Missouri basketball tourney was an event attended by certain Archdiocese students. Both Umbach and Phillips attended the tourney with McNairy in March 1982. Maryland submits that all the victims' sexual encounters with McNairy occurred after March 1982  subsequent to their policy coverage. Lloyd's contends otherwise; that the first encounter for each victim was at the Blue Springs basketball tourney in March 1982  prior to their policy coverage.
Because of their mental handicaps, the victims' accounts of McNairy's dirty doings are somewhat foggy. But the preponderance of the credible evidence supports the Court's conclusion that Umbach was first molested after April 1, 1982, subsequent to the Blue Springs tourney. There are references to possible earlier abuse, even from the victim, but the Court finds this not reliable and more the result of counsel's persuasive interrogation than from actual fact. It seems as though the victim was led into making statements regarding pre-April 1 abuse and the Court finds them tentative at best, and untrustworthy of belief, whereas his statements regarding April encounters are unequivocal, viz., that he was sure that he first met McNairy in April of 1982, a month before he graduated from school. Umbach deposition, Oct. 31, 1989. The believable evidence establishes that the first incident of abuse to Umbach occurred after April 1, 1982, the time of complaint in his petition for damages in St. Louis City Circuit Court.
The Umbach suit was settled by the Archdiocese for the aggregate sum of $195,349.22, which the Court finds, based on stipulation of counsel, is reasonable.
With regard to the Archdiocese claim against Lloyd's, the parties agree on the law appropriate to this case: An insured who settles a case where the insurer has wrongfully refused to defend need only establish the reasonableness of the settlement, *66 not that the insured would have ultimately been liable, United States Auto Ass'n v. Morris, 154 Ariz. 113, 741 P.2d 246, 253 (1987); the Archdiocese must prove that the date of first abuse against the victim (Umbach) was within Lloyd's policy period on or after April 1, 1982. Banco Nacional De Nicaragua v. Argonaut Ins. Co., 681 F.2d 1337, 1340 (11th Cir.1982).
On the Umbach claim, the Court finds that the first occurrence of sexual abuse was on or after April 1, 1982. This is during the period of policy coverage by Lloyd's. Ergo, Lloyd's is liable to the Archdiocese in the amount of $195,349.22 plus interest at the rate of 9% per annum from and after March 5, 1990 to date of this judgment.[2]Joint Post Trial Submission of the Parties, ¶ XII. See also, Additional Stipulation of the Parties, ¶ 3 respecting payment of Umbach settlement by the Archdiocese on March 5, 1990.
On the other hand, the preponderance of the tenable evidence in the Phillips case is steadfast to the fact that the first occurrence of abuse occurred during the Maryland policy period  at least on or before March 30, 1982.
The Blue Springs basketball tourney is the centerpiece here. Phillips was substantially clear in identifying McNairy's sexual advances to him at the tourney. And his aunt corroborated his testimony by observing a dramatic change in Phillips' personality and physical actions immediately upon his return from the tourney. He regularly gagged on his food, became incontinent and had trouble in school.
The Court is satisfied that it was during or before the March 30, 1982 tourney that the first occurrence of abuse to Phillips took place. This would place coverage for the Phillips' claim under the Maryland policy.
The Phillips' claim was settled by the Archdiocese on June 21, 1991 for the total sum of $126,128.45, including attorneys' fees and costs of suit. Additional Stipulation of the Parties, ¶ 3. The reasonableness of the settlement is not challenged. Joint Post Trial Submission of the Parties, ¶ 59.
However, the Court must consider whether the Archdiocese is entitled to reimbursement on the Phillips' claim by reason of Maryland's failure to defend the lawsuit or by refusing to indemnify the settlement paid.
Maryland contends that the Archdiocese failed to give timely notification of suit and was not properly tendered the Phillips' suit for defense.
The Maryland policy providing coverage contains the following provision relating to notice:
4. Insured's Duties in the Event of Occurrence, Claim or Suit
a) In the event of an occurrence, written notice containing particulars sufficient to identify the insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the insured to the company or any of its authorized agents as soon as practicable.
Such notice provision is a valid prerequisite to recovery and is to allow the insurance company an opportunity to investigate the claim. Greer v. Zurich Ins. Co., 441 S.W.2d 15, 30 (Mo.1969). In determining whether the notice is late  meaning beyond a reasonable time  the Court is to look to the particular circumstances of each case. Ralston Purina Co. v. Home Ins. Co., 760 F.2d 897 (8th Cir.1985); Scott v. Club Exchange Corp., 560 S.W.2d 289 (Mo.Ct.App. 1977).
In this instance the Phillips suit was filed May 16, 1990. Notice of the suit and tender of defense with copy of petition and summons were sent by the Archdiocese to Maryland on June 6, 1990. However, Maryland contends that the Archdiocese was *67 aware of the possibility of alleged abuses as early as August of 1988. As a consequence, it forwards the defense of failure of proper notice of the claim.
With regard to delay of notice defense, the Missouri law is precisely and concisely stated in Miller v. Lindgate Developers, Inc., 274 F.Supp. 980, 983 (E.D.Mo.1967) (citing Hawkeye-Security Ins. Co. v. Davis, 277 F.2d 765 (8th Cir. 1960) and Powell v. Home Indem. Co., 343 F.2d 856 (8th Cir.1965)) as follows:
Under Missouri law, an insurer will not be relieved from liability under a policy because of delay of the insured in giving notice of an accident or suit unless the insurer proves that failure to give such timely notice results in prejudice to the insurer.
The Archdiocese attorney discussed the Phillips case with a claims representative of Maryland and also sent depositions and other materials pertaining to the case. The entire investigative file was made available to Maryland.
Maryland did not take over the defense of the case, and the Phillips matter was ultimately settled on June 21, 1991, for $126,128.45 including attorneys' fees and cost of the suit.
From the foregoing, the Court concludes that Maryland's policy provided coverage for the Phillips suit, as the offense as to him occurred on or before March 30, 1982. The amount paid in settlement was reasonable. The Court does not find that there was delay of notification, but if indeed there was, Maryland has not established any prejudice by such delay which would permit it to elude responsibility for payment of $126,128.45 under the policy for the Phillips claim.
Judgment will be in favor of the Archdiocese on its claim against Lloyd's for $95,349.22 with interest thereon at the rate of 9% per annum from May 5, 1990 to date of judgment.
Judgment will be in favor of the Archdiocese on its claim against Maryland for failure to defend for $126,128.45 with interest thereon at the rate of 9% per annum from June 21, 1991 to date of judgment.
NOTES
[1] A Portland Archdiocese priest was guilty of sexual molestation of minors over a period of years. Suit was filed against the Archdiocese on behalf of one of the victims, and the question was raised  for purposes of which insurance policy provided coverage  as to when the offense took place. The District Court applied the first occurrence doctrine.
[2] The Archdiocese's claim against Lloyd's is based on pure indemnity. The Lloyd's policy contains a $100,000 per claim deductible.