**McCONNELL CONSTRUCTION COMPANY,**
Petitioner,

v.

**INSURANCE COMPANY OF ST. LOUIS,**
Respondent.

No. B–581.

Supreme Court of Texas.

May 22, 1968.

Rehearing Denied June 26, 1968.

Vinson, Elkins, Weems & Searls, John N. Touchstone, Houston, for petitioner.

Hiram A. Warner, Jr. and A. Jay Bannon, Houston, for respondent.

NORVELL, Justice.

McConnell Construction Company sought a recovery against Insurance Company of St. Louis upon a "Builder's Risk" insurance policy which contained the following clauses as to Coverage, Contamination, Exclusion and Policy Termination, viz.:

"Coverage: Subject to the provisions of this form (Form No. 148–S. Physical Loss Form—January 1, 1959) and of the policy to which this form is attached including endorsements thereon, this policy insures against all risks of physical loss to the described dwelling(s), building(s), or structure(s) covered under this form."

"Exclusions: This policy does not insure against * * * Loss by contamination including such loss by any radioactive or fissionable materials."

"Expiration: It is understood and and agreed that this insurance shall attach only while the building or buildings are in the course of construction, and until fully completed and occupied either in whole or in part. * * *" (Attached Form 21).

As stated in McConnell's application, the jury found: (1) that the residence was damaged on November 26, 1959, as a result of the application of muriatic acid to the brick flooring therein; (2) that the reasonable cost of necessary replacement of the damaged portion of the house was $4,227.66; and (3) that all the damages occurred before the house was occupied by the new owner."[1]

The trial court rendered judgment for McConnell upon the jury's findings. The Court of Civil Appeals held that the evidence established as a matter of law that the loss sustained was due to contamination and came within the exclusion clause above set out. 419 S.W.2d 867.

The damage sustained by McConnell as builder and owner of a house was a corrosion of the metal parts of such house, doorknobs, metal fixtures, aluminum window frames and the like, caused primarily by fumes or gases arising from a chemical reaction which took place when muriatic acid was applied to the brick and mortar of a new floor. This reaction is fully described in the opinion of the Court of Civil Appeals and need not be repeated here. McConnell's expert witness referred to the process whereby the metal fixtures were damaged in terms of corrosion. He described the corrosive effect of the fumes as being "an attack within the structure itself. Metal is put together by grains, as we call them. They are just like brick in a brick wall. And

where the grains join, you have an attack by (in) the metal. Then you have what we call intergranular corrosion from the acid * * * A window frame * * * is a highly stressed metal part, due to the way it is formed and you can actually see striations of corrosion."

The witness' description of corrosion is in accordance with the definition contained in Webster's Third New International Dictionary, viz.:

"corrode 1: to eat away by degrees as if by gnawing (corroded by consumption and indigence): wear away or diminish by gradually separating or destroying small particles or converting into an easily disintegrated substance; esp: to eat away or diminish by acid or alkali reaction or by chemical alteration (the metal was corroded beyond repair by exposure) (the caustic substance corroded the material so that it fell apart in the hands) 2 obs: to eat or gnaw away 3: to weaken or destroy (as spirit, strength or force) by a gradual process of impairment (manners and miserliness that corroded the human spirit) 1 to act corrosively (certain chemicals will corrode if left on bare metal) 2: to undergo corrosion (the bare metal began to corrode after a few weeks of exposure to the weather)."

We have here damage by corrosion. As the policy contains an "all risks" insuring clause, damage to property by corrosion is covered unless excluded from the policy coverage. The contamination exclusion was relied upon by the insurance company and the Court of Civil Appeals held that the type of corrosion damage disclosed by the evidence was comprehended by such exclusion. In American Casualty Company of Reading,

1. This statement is not strictly accurate in that the jury did not make a finding from the preponderance of the evidence. Special Issue No. 3 and the jury's answer thereto was as follows:
"Do you find from a preponderance of the evidence that, other than in the rooms in which muriatic acid was applied to the brick floors, the damages which occurred within the house did not occur until after the house was occupied by the new owner?" Answer "We do not."

Pennsylvania v. Myrick, 304 F.2d 179, 96 A.L.R.2d 1352 (5th Cir. 1962), foodstuffs, principally eggs, were rendered unfit for human consumption due to contact with ammonia gas. It was held that such foodstuffs had been contaminated and hence the loss came within the clause of the policy which expressly excluded loss or damage caused by or resulting from contamination. The Court of Appeals said: " 'Contamination' connotes a condition of impurity resulting from mixture or contact with a foreign substance" and approved the trial court's instruction which defined "contaminated" as meaning the "state of being contaminated; an impurity; that which contaminates; to make inferior or impure by mixture; an impairment of purity; loss of purity resulting from mixture or contact."

Webster's *Third New International Dictionary* defines contaminate as follows:

"1: to soil, stain, corrupt, or infect by contact or association (a surgical wound contaminated by bacteria) (believers contaminated by the presence of infidels): make inferior or impure by mixture: pollute (iron contaminated by phosphorus) 2: to render unfit for use by the introduction of unwholesome or undesirable elements (water contaminated by sewage)."

■ Corrosion and contamination are not synonymous terms. The connotation of contamination is a mixing of substances like dirt and water which results in an impure mixture. Corrosion on the other hand connotes disintegration, oxidation, decay of metal and the like. While it may be possible that under certain situations, a corrosion may also be classified as a contamination, that is not the situation here. We have no mixing of substances resulting in impurity. We have a pitting, a destruction and a disintegration of metal caused by chemical fumes and a resultant degenerative reaction adversely affecting the structure of metal. We hold that the loss in this case was com-

prehended by the insuring clause of the policy and was not excluded therefrom.

■ Because of its holding that McConnell's property loss came within an exclusion to the policy coverage, it was unnecessary for the Court of Civil Appeals to pass upon other points contained in the insurance company's brief in the Court of Civil Appeals. Since we disagree with the above mentioned holding of the Court of Civil Appeals, it becomes our duty to either remand this cause to the Court of Civil Appeals for a review of such points, or consider them here and ascertain if the judgment of the Court of Civil Appeals may be affirmed upon some point not discussed by it. Leonard v. Texaco, Inc., 422 S.W.2d 160 (Tex.Sup.1967). None of such points raise fact issues within the exclusive jurisdiction of the Court of Civil Appeals, and we have elected to dispose of the case here.

■ The Insurance Company of St. Louis, as appellant in the Court of Civil Appeals, contended that a peremptory instruction in its favor should have been given because the original policy of insurance which was the basis of the claim asserted against it was not introduced in evidence. McConnell Construction Company attached a copy of a memorandum of insurance to its petition. This was evidently the document delivered to the insured. Such exhibit contained two forms prescribed by the State Insurance Commission, namely, Form No. 21, Builder's Risk—Actual Completed Value Form—, and Form No. 148-S, Physical Loss Form.

The company specifically pleaded the contamination exclusion set forth in Form No. 183 and the termination provisions contained in Form 21. These forms were introduced in evidence. Both were signed by J. H. Blades, acting for J. H. Blades & Company, agent for the Insurance Company of St. Louis, and contain all the clauses pertinent to this controversy which are quoted above, together with a description of the property. J. H. Blades testi-

fied that a copy of the policy and endorsements, which the insurance company refers to as the original policy, was mailed to a mortgagee, and, after the loss occurred, was returned to him and then sent by him to the insurance company in St. Louis, Missouri through the Texas Checking Office for cancellation.

In Standard National Insurance Co. v. Bayless, 338 S.W.2d 313 (Tex.Civ.App. 1960, writ ref'd, n. r. e.), the court, in a situation similar to that now before us, said:

"[A]ppellees being the insured therein had a property right in said policies, and having instituted suit upon them, the very nature of the suit puts the opposite party who holds the instruments upon notice to produce them. * * *"

The contention of the insurance company lacks substance and the point is overruled. Pacific Mutual Insurance Company v. Talbert, 271 S.W.2d 487 (Tex. Civ.App.1954, no writ), McCormick and Ray, Texas Law of Evidence (2d Ed.), §§ 1562 and 1570.

■ The insurance company also contends that the jury's answer to Special Issue No. 3 above referred to has no support in the testimony. It is argued that under the terms of the policy, coverage came to an end when the house was turned over to the owner and that although the muriatic acid was applied to the brick floor before that time, the damage to the metal parts of the house occurred after the owners had taken possession and turned on the heating system which caused air to circulate throughout the house. The situation is likened to that of a gas leak which may have existed while a house was under construction, but did not result in an explosion until some time after the house had been turned over to a purchaser. It is said that this type of loss is not covered by a builder's risk policy.

As might be expected, the evidence is somewhat skimpy as to the air circulation in the house shortly after the acid was applied to the brick floor. Undoubtedly, there was some air movement and, as pointed out by the Court of Civil Appeals, there was testimony that damage from the acid fumes would occur almost instantaneously. There was also testimony that damage would occur even though the heating system was not turned on. We cannot say there was no evidence to support the jury's answer to Special Issue No. 3.

The insurance company called no witnesses in this case. The evidence as to the causes and factors which resulted in the corrosion of the metal parts of the house is undisputed and not subject to divergent or conflicting inferences. There was no occasion for giving the insurance company's requested instruction or definition relating to "contamination." There being no dispute in the facts, the question of whether the corrosion which occurred came within the contamination exclusion was not a jury issue in this case.

■ There was no error in awarding judgment for the McConnell Company although the insurance policy contained a loss payable clause for the benefit of a mortgagee "as its interest may appear." The McConnell Company was the owner of the property when the loss took place and expended the necessary amount of money to replace the damaged metal parts. There is no suggestion that the mortgagee was affected in any way by the loss. The damaged metal parts have been replaced without cost to the mortgagee and the pleadings of the insurance company nowhere assert by abatement or otherwise that the mortgagee was a necessary party to the present suit. In Camden Fire Ins. Assoc. v. Wandell, 195 S.W. 289 (Tex. Civ.App.1917, no writ), it was said:

"Appellee, being the assured under the policy, has the right to maintain an action thereon in his own name, although the policy contains a clause providing for payment of loss, if any, to

Real Estate Loan Company as its interest may appear. * * *

"Appellant did not by plea in abatement or otherwise plead nonjoinder of the loan company nor ask that it be made a party. Branigan v. Jefferson Mutual Fire Ins. Co., 102 Mo.App. 70, 76 S.W. 643."

We find no error in the trial court's action in awarding damages in accordance with the jury's answer to Special Issue No. 2, based upon the reasonable cost of the necessary replacement of the portions of the house damaged by the application of muriatic acid to the brick floors therein.

None of the insurance company's points contained in its brief filed in the Court of Civil Appeals discloses a reversible error. For the reasons stated, the judgment of the Court of Civil Appeals is reversed and the judgment of the trial court affirmed.