**CERTAIN UNDERWRITERS AT LLOYD'S SUBSCRIBING TO POLICY NO. WDO–10000, Appellants,**

v.

**KKM INC., d/b/a Strand Surplus, Appellee.**

No. 13–05–031–CV.

Court of Appeals of Texas, Corpus Christi–Edinburg.

Dec. 28, 2006.

Carter L. Ferguson, Richard Hunt Gateley, Brackett & Ellis, P.C., Fort Worth, Timothy A. Beeton, Simpson, Beeton & Finegan LLP, Samuel Finegan, Galveston, for Appellant.

John S. Powell, John Powell & Associates, Pearland, for Appellee.

Before Justices CASTILLO, GARZA, and WITTIG [1].

## OPINION

Opinion by Justice GARZA.

This appeal from a final judgment involves an insurance claim for a building that collapsed on June 6, 2002. Appellee was the owner of the building at the time of the collapse and had owned the building since 1979. In 2001, appellee purchased a one-year insurance policy from appellants. When the building collapsed less than one year later, appellee submitted a property loss notice to appellants. Appellants subsequently denied coverage for the claim and filed an action for declaratory judgment, requesting that the trial court declare, among other things, that they have no obligation to pay appellee's claim. Appellee responded to the lawsuit and filed counterclaims against appellants for breach of contract and violations of the Texas Deceptive Trade Practices Act. The trial court found that the terms of the policy were ambiguous, and the issue of policy coverage was submitted to the jury. The jury found that appellee was entitled to coverage and awarded money damages. A final judgment was entered on the verdict, and appellants now raise nine issues on appeal. We reverse the judgment and remand the case for further proceedings consistent with this opinion.

---

1. Retired Justice Don Wittig assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to Tex. Gov't Code Ann. § 74.003 (Vernon Supp.2004).

## I. Waiver of Claim for Breach of Contract

■ In their first and fourth issues, appellants contend that "[t]he trial court erred because ... [appellee] failed to request and obtain findings on causation." According to appellants, appellee "waived its right to recover" for breach of contract. *See* TEX.R. CIV. P. 279 ("Upon appeal all independent grounds of recovery or of defense not conclusively established under the evidence and no element of which is submitted or requested are waived."). We disagree.

■ As a breach-of-contract claimant, appellee had the burden to ensure that all essential elements of its cause of action were submitted to the jury. *Cameron County v. Velasquez*, 668 S.W.2d 776, 781 (Tex.App.-Corpus Christi 1984, writ ref'd n.r.e.). A claimant in an action for breach of contract must show the existence of a contract between the parties, that the contract created duties, that a breach of the duties occurred, and that the party sustained damages. *City of Corpus Christi v. Bayfront Assocs., Ltd.*, 814 S.W.2d 98, 103 (Tex.App.-Corpus Christi 1991, writ denied); *see also Solis v. Evins*, 951 S.W.2d 44, 50 n. 3 (Tex.App.-Corpus Christi 1997) (orig. proceeding). The parties' live pleadings and the evidence and arguments presented at trial all pertained to a controversy as to whether and to what extent insurance policy coverage applied to the collapse of the building. In both their live petition for declaratory judgment and live answer to appellee's counterclaims, appellants acknowledged the existence of a binding contract for insurance coverage, but maintained that no coverage applied to appellee's claim.

■ Our rules of civil procedure provide that "[i]n all jury cases the court shall, whenever feasible, submit the cause upon broad-form questions." TEX.R. CIV. P. 277.

Whether a granulated or broad-form charge is submitted, the trial court's duty is to submit only those questions, instructions, and definitions raised by the pleadings and the evidence. *Harris County v. Smith*, 96 S.W.3d 230, 236 (Tex.2002); *Elbaor v. Smith*, 845 S.W.2d 240, 243 (Tex. 1992); *see also* TEX.R. CIV. P. 278. The Texas Pattern Jury Charge offers the following example of an acceptable broad-form jury charge on a claim for breach of contract:

QUESTION _____

Did *Don Davis* fail to comply with the agreement?

*[Insert instructions, if appropriate.]*

ANSWER: _____

The jury charge submitted by the trial court in this cases included the following questions:

### QUESTION NUMBER 1

UNDER THE INSURANCE POLICY IN QUESTION:

Do you find, based upon a preponderance of the evidence, that KKM, Inc. d/b/a Strand Surplus, should recover against Certain Underwriters of Lloyd's London Subscribing to Policy WDO–10000?

ANSWER "Yes" or "No".

ANSWER: "Yes".

### QUESTION NUMBER 2

EXTENT OF COVERAGE

Do you find, based upon a preponderance of the evidence that KKM, Inc. d/b/a Strand Surplus' coverage under the insurance policy in question should be limited to the part of the building which actually fell to the ground, or that coverage should extend to all damages and losses caused by the collapse?

ANSWER "A" or "B" below:

A. Limited to the part of the building which actually fell to the ground.

B. Coverage should extend to all damages and losses caused by the collapse.
ANSWER: "B".

The jury's answers to the foregoing questions established appellants' liability for breach of contract. The jury also answered questions on damages, which were incorporated into the trial court's final judgment. Given these findings, we disagree with appellants' contention that appellee "waived its right to recover" for breach of contract. See Tex.R. Civ. P. 279. Based on the pleadings, evidence, arguments, and final judgment issued by the trial court, we conclude that appellee did not waive its claim for breach of contract. This conclusion is supported by the jury charge, which submitted to the jury questions to establish or negate the essential elements of appellee's cause of action for breach of contract: namely, the existence of a valid insurance policy covering the denied claim and entitlement to money damages on that claim. See Smith, 96 S.W.3d at 236; City of Corpus Christi, 814 S.W.2d at 103. Accordingly, appellants' first and fourth issues are overruled.

## II. Ambiguity

■ In their second issue, appellants argue that "[t]he trial court erred in determining that the terms 'corrosion' and 'decay' were synonymous or ambiguous." Appellants contend that the policy language is unambiguous and should have been construed as a matter of law against appellee's claim for coverage. They further contend that the trial court erred in submitting a jury charge with an instruction on ambiguity because appellee never plead ambiguity. According to appellants, "The application of the unambiguous exclusions for corrosion bars recovery, and the judgment must be reversed and judgment rendered that . . . [appellee] take nothing." See Universal Health Servs., Inc. v. Re-naissance Women's Group, P.A., 121 S.W.3d 742 (Tex.2003) (holding that trial court erred in submitting jury charge question on interpretation of unambiguous contract and rendering a take-nothing judgment against claimants).

■ We begin with the general proposition, cited by appellants, that a party seeking to establish ambiguity under a written contract must specifically plead such ambiguity. Crozier v. Horne Children Maint. & Educ. Trust, 597 S.W.2d 418, 421 (Tex. Civ.App.-San Antonio 1980, writ ref'd n.r.e.); see also Modern Exploration, Inc. v. Maddison, 708 S.W.2d 872, 876 (Tex. App.-Corpus Christi 1986, no writ). Whether a contract is ambiguous is a question of law for the court. Coker v. Coker, 650 S.W.2d 391, 394 (Tex.1983). The Texas Supreme Court has held that a court may conclude that a contract is ambiguous even in the absence of such a pleading by either party. Sage St. Assocs. v. Northdale Constr. Co., 863 S.W.2d 438, 445 (Tex. 1993); see also J.M. Davidson, Inc. v. Webster, 128 S.W.3d 223, 231 (Tex.2003). Accordingly, the trial court did not err in ruling that the contract was ambiguous merely because ambiguity was not plead.

■ Next, we consider the relevant contractual language to determine whether the trial court erred in concluding that the contract was ambiguous. In construing a contract, we first determine whether it is possible to enforce the contract as written, without resort to parol evidence. J.M. Davidson, Inc. v. Webster, 128 S.W.3d 223, 229 (Tex.2003); see also Harris v. Rowe, 593 S.W.2d 303, 306 (Tex.1979). The primary concern of the court is to ascertain the true intentions of the parties as expressed in the instrument. R & P Enters. v. LaGuarta, Gavrel & Kirk, Inc., 596 S.W.2d 517, 518 (Tex.1980); City of Pinehurst v. Spooner Addition Water Co., 432 S.W.2d 515, 518 (Tex.1968). To achieve

this objective, we must examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless. *Universal C.I.T. Credit Corp. v. Daniel*, 150 Tex. 513, 243 S.W.2d 154, 158 (1951). No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument. *J.M. Davidson, Inc.*, 128 S.W.3d at 229; *Myers v. Gulf Coast Minerals Mgmt. Corp.*, 361 S.W.2d 193, 196 (Tex.1962); *Citizens Nat'l Bank v. Tex. & P. Ry. Co.*, 136 Tex. 333, 150 S.W.2d 1003, 1006 (1941). A contract is unambiguous if it can be given a definite or certain legal meaning. *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex.1996). Lack of clarity does not create an ambiguity. *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 134 (Tex. 1994). Not every difference in the interpretation of a contract amounts to an ambiguity. *See Universal Health Servs., Inc.*, 121 S.W.3d at 746. A contract is ambiguous only if it is subject to two or more reasonable interpretations after applying the pertinent rules of construction. *Columbia Gas*, 940 S.W.2d at 589; *see also J.M. Davidson, Inc.*, 128 S.W.3d at 229. If a contract is ambiguous, a fact issue exists on the parties' intent that may be properly submitted to the trier of fact. *See J.M. Davidson, Inc.*, 128 S.W.3d at 229; *Universal Health*, 121 S.W.3d at 746.

██ The controlling language of the policy involves two different provisions. They are as follows:

2. We will not pay for loss or damage caused by or resulting from any of the following:

d. (2) rust, corrosion, fungus, decay, decomposition, hidden or latent defect or any quality in property that causes it to damage or destroy itself.

* * *

2. We will pay for direct physical loss or damage to Covered Property, caused by collapse of a building or any part of a building that is insured under this Coverage Form or that contains Covered Property insured under this Coverage Form, if the collapse is caused by one or more of the following:

* * *

b. Decay that is hidden from view, unless the presence of such decay is known to an insured prior to collapse;

The parties agree that the claim asserted by appellee involves a collapse caused by corrosion. *See* Brief of Appellants p. 1 ("The Collapse was caused by advanced corrosion of the steel reinforcement of the concrete beams and columns."); Brief of Appellee p. 2 ("[E]veryone agreed upon 'causation' ... that the collapse of June 6, 2002 was caused by corrosion."). The central dispute on liability concerned whether a collapse caused by corrosion is a covered loss under the policy. We conclude that the contract is ambiguous on that issue.

The parties have advanced different interpretations of the policy. Appellants contend that the policy's use of the terms "rust, corrosion, fungus, decay, decomposition, hidden or latent defect" demonstrates that the terms are each different and carry unique individual meanings. Thus, rust is not corrosion, fungus is not decay, decomposition is not a hidden defect, and so on. If each word were in fact different, then decay and corrosion would not be the same and the policy's language allowing coverage for collapses caused by hidden decay would not extend to collapses caused by corrosion. In contrast, appellee contends that the policy is ambiguous because corrosion could mean decay, something similar to decay, or something entirely different than decay. If decay can be read to in-

clude corrosion or to be synonymous with corrosion, then appellee's claim would arguably be covered by the provision for collapse caused by hidden decay. This is the conclusion presumably reached by the jury, which found that the claim was covered.

We hold that the trial court did not err in submitting the issue to the jury. Contract terms are given their plain, ordinary, and generally accepted meanings unless the contract itself shows them to be used in a technical or different sense. *Valence Operating Co. v. Dorsett,* 164 S.W.3d 656, 662 (Tex.2005); *Heritage Res., Inc.v. NationsBank,* 939 S.W.2d 118, 121 (Tex.1996); *W. Reserve Life Ins. Co. v. Meadows,* 152 Tex. 559, 261 S.W.2d 554, 557 (1953). In this case, the policy does not provide any special definitions of "corrosion" or "decay." Accordingly, we give those terms their plain, ordinary, and generally accepted meanings. *See Valence Operating,* 164 S.W.3d at 662; *Heritage Res.,* 939 S.W.2d at 121; *W. Reserve Life,* 261 S.W.2d at 557. Courts are allowed to use dictionaries in determining a word's plain, ordinary, and generally accepted meaning. *See Fiess v. State Farm Lloyds,* 202 S.W.3d 744, 746 n. 8 (Tex.2006); *Am. Mfrs. Mut. Ins. Co. v. Schaefer,* 124 S.W.3d 154, 158–59 (Tex.2003). Appellee argues that we cannot use a dictionary for this purpose, but its contention is unsupported by the law. *See Fiess,* 202 S.W.3d at 750 n. 29, 751 n. 30; *Am. Mfrs. Mut. Ins.,* 124 S.W.3d at 158–59. There would be significantly less predictability in the application of contract construction principles if courts were barred from looking to dictionaries in giving words their plain, ordinary, and generally accepted meanings.

Merriam Webster's Collegiate Dictionary (10th ed.1996) provides the following definitions for "corrode" and "decay":

**Corrode:** 1: to eat away by degrees as if by gnawing; esp: to wear away gradually usu. by chemical action (the metal was *corroded* beyond repair); 2: to weaken or destroy gradually: undermine.

**Decay:** 1: to decline from a sound or prosperous condition; 2: to decrease gradually in quantity, activity, or force; 3: to fall into ruin; 4: to decline in health, strength, or vigor; 5. to undergo decomposition.

Notably, Webster's Dictionary lists "decompose," "rot," "putrefy," and "spoil" as synonyms of "decay," but it does not include "corrode" as a synonym of "decay." In distinguishing the subtle differences between the terms, Webster's Dictionary states that "DECAY implies a slow change from a state of soundness or perfection (*a decaying mansion* )."

In order to conclude that the trial court erred, we would have to hold that the policy has a single definite or certain legal meaning. *See Columbia Gas,* 940 S.W.2d at 589. We would have to conclude that, as a matter of law, decay is not corrosion and vice versa. In our view, doing so would be ill-advised. The definitions quoted above do not support the argument advanced by appellants that "corrode" applies to metal substances and "decay" applies to organic matter. To the contrary, Webster's Dictionary uses a decaying mansion as an example of the "slow change from a state of soundness or perfection" that is implied by the word "decay." Thus, the words cannot be easily parsed into two categories, with one applying to metals and the other applying to organic matter.

We are not persuaded that "to wear away gradually" is so distinct from "to decline from a sound or prosperous condition" that the words "corrode" and "decay"

are, as a matter of law, different and that the relevant policy language is therefore capable of only one interpretation. In overruling the issue, we note that appellants have not addressed the Texas Supreme Court's precedent in *McConnell Constr. Co. v. Ins. Co. of St. Louis,* 428 S.W.2d 659, 661 (Tex.1968). In *McConnell,* the Texas Supreme Court construed the terms of an insurance policy and held that, as a matter of law, corrosion and contamination were not synonymous. *Id.* In doing so, the court explained, "Corrosion ... connotes disintegration, oxidation, decay of metal and the like." *Id.* Based on *McConnell* and the above-quoted definitions from Webster's Dictionary, we conclude that the meaning of the policy was uncertain and that the issue was properly submitted to the jury. Appellants' second issue is overruled.

## III. Legal Sufficiency Points

In their third issue, appellants contend that "[t]he judgment should be reversed and judgment rendered that [appellee] ... take nothing because [appellee's] ... claim was excluded or not covered under the Policy as a matter of law." The issue is argued in two points: (1) "the evidence conclusively established that the Collapse was caused by one or more excluded causes of loss including rust, corrosion, the continuous or repeated seepage or leakage of water over a period or 14 days or more, and faulty, inadequate or defective maintenance"; and (2) "the evidence conclusively established that ... [appellee's] loss was ongoing at the inception of the Policy."

These are legal sufficiency points, but they have not been expressly presented as such. *City of Keller v. Wilson,* 168 S.W.3d 802, 814 (Tex.2005) ("Texas courts conducting a no-evidence review traditionally do not disregard contrary evidence that conclusively establishes the opposite of a vital fact."). Appellants have not presented the standard of review for a legal sufficiency challenge or identified their issues as legal sufficiency challenges. Even though the standard of review for legal sufficiency challenges is well settled and widely known, it should nonetheless be included in any appellate brief raising a legal sufficiency point. This sharpens the issues on appeal and ensures that the parties brief the reviewing court on controlling matters of law. Appellants' brief is inadequate in this regard. *See* TEX.R.APP. P. 38.1(h). Nevertheless, it is clear from the arguments presented in the brief that appellants challenge the legal sufficiency of the evidence to support the jury's finding that appellee was entitled to recover on the policy. Because appellants' brief is otherwise adequate to present the issues raised, we proceed to the merits of those issues without condoning the manner in which they have been presented.

### A. Standard of Review

In conducting a legal sufficiency review, we credit evidence supporting the judgment if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not. *City of Keller,* 168 S.W.3d at 827. We will sustain a legal sufficiency, or no-evidence, point if the record reveals one of the following: (1) the complete absence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a scintilla; or (4) the evidence established conclusively the opposite of the vital fact. *See Uniroyal Goodrich Tire Co. v. Martinez,* 977 S.W.2d 328, 334 (Tex. 1998). If more than a scintilla of evidence exists, it is legally sufficient. *Lee Lewis Constr. Inc. v. Harrison,* 70 S.W.3d 778, 782 (Tex.2001). More than a scintilla of evidence exists if the evidence furnishes

some reasonable basis for differing conclusions by reasonable minds about a vital fact's existence. *Id.* at 782–83.

### B. Applicability of Policy Exclusions

 Appellants contend that "the evidence conclusively established that the Collapse was caused by one or more excluded causes of loss including rust, corrosion, the continuous or repeated seepage or leakage of water over a period or 14 days or more, and faulty, inadequate or defective maintenance."

Evidence is conclusive only if reasonable people could not differ in their conclusions, a matter that depends on the facts of each case. *City of Keller,* 168 S.W.3d at 816. In this case, the insurance policy excludes from coverage specific types of losses, some of which we have already detailed in the analysis above. For instance, the policy specifically excludes from coverage losses caused by "rust, corrosion, fungus, decay, decomposition, hidden or latent defect or any quality in property that causes it to damage or destroy itself." The policy also excludes losses caused by "continuous or repeated seepage or leakage of water over a period or 14 days or more" and losses caused by "faulty, inadequate or defective maintenance." Despite these exclusions, the policy includes the following provision:

D. Additional Coverage—Collapse

The term Covered Cause of Loss includes Additional Coverage—Collapse as described and limited in D.1. through D.5. below:

\* \* \*

2. We will pay for direct physical loss or damage to Covered Property, caused by collapse of a building or any part of a building that is insured under this Coverage Form or that contains Covered Property insured under this Coverage Form, if the collapse is caused by one or more of the following:

\* \* \*

b. Decay that is hidden from view, unless the presence of such decay is known to an insured prior to collapse.

The controlling question presented in this issue is whether the foregoing provision for "Additional Coverage" trumps the exclusions relied upon by appellants. In our analysis of appellants' second issue, we concluded that, as used in the policy, the terms "corrode" and "decay" were ambiguous. In doing so, we specifically referenced one of the exclusions now relied upon by appellants, namely, the exclusion for losses caused by "rust, corrosion, fungus, decay, decomposition, hidden or latent defect or any quality in property that causes it to damage or destroy itself." The conflict between the provisions in that instance was obvious. The exclusion barred recovery for damage or loss caused by "decay," whereas the "Additional Coverage" provision specifically allowed recovery for "collapse . . . caused by . . . decay that is hidden from view." The parties' arguments as to their respective interpretations of the two seemingly inconsistent provisions acknowledged that the provision for "Additional Coverage" was effective and trumped the exclusion for damage or loss caused by "decay." We now conclude that the same is true for the other exclusions relied upon by appellants. The provision for "Additional Coverage" is not subject to the exclusions relied upon by appellants but is rather a separate provision that supplements coverage already subject to the exclusions. In other words, the "Additional Coverage" provision supplements the coverage otherwise provided, extending it beyond the carved out exclusions. This is most obvious as coverage relates to "decay," but it holds true for the other exclusions as well. For this reason, we need not address whether the evidence conclusively established that the collapse

was caused by an excluded cause. Even if it were conclusively established that one of the excluded causes, such as "decay," caused the collapse, appellants would nevertheless have to establish that the evidence was legally insufficient to prove that the collapse was "caused by ... decay that is hidden from view." This they have not done, nor have they attempted to do so on appeal. Accordingly, the first point raised in appellants' third issue is overruled.

## C. Fortuity Doctrine

In the second point of their third issue, appellants argue that the trial court erred in not rendering a take-nothing judgment against appellee based on the fortuity doctrine. The fortuity doctrine as a bar to recovery was raised with detailed allegations in appellants' pleadings. The trial court denied appellants' request for a jury instruction on the fortuity doctrine. We sustain appellants' third issue as it relates to the fortuity doctrine.

 Generally, fortuity is an inherent requirement of all risk insurance policies. *Two Pesos v. Gulf Ins. Co.*, 901 S.W.2d 495, 501 (Tex.App.-Houston [14th Dist.] 1995, no writ); *Miles v. Royal Indem. Co.*, 589 S.W.2d 725, 729 (Tex.Civ. App.-Corpus Christi 1979, writ ref'd n.r.e.); *Brownsville Fabrics, Inc. v. Gulf Ins. Co.*, 550 S.W.2d 332, 336–37 (Tex.Civ.App.-Corpus Christi 1977, writ ref'd n.r.e.). As the Fourteenth Court of Appeals has noted, "The concept of insurance is that the parties, in effect, wager against the occurrence or non-occurrence of a specified event; the carrier insures against a risk, not a certainty." *Two Pesos*, 901 S.W.2d at 501 (quoting *Bartholomew v. Appalachian Ins. Co.*, 655 F.2d 27, 29 (1st Cir. 1981)). The fortuity doctrine incorporates the "known loss" and "loss in progress" principles. *Id.* These aspects of the fortuity doctrine focus on the proposition that

insurance coverage is precluded where the insured is, or should be, aware of an ongoing progressive loss or known loss at the time the policy is purchased. *Id.* (citing *Inland Waters Pollution Control, Inc. v. Nat'l Union Fire Ins. Co.*, 997 F.2d 172, 175–77 (6th Cir.1993)). A "known loss" is a loss the insured knew had occurred prior to making the insurance contract. *See Burch v. Commonwealth Mut. Ins. Co.*, 450 S.W.2d 838, 840–41 (Tex.1970); *Scottsdale Ins. Co. v. Travis*, 68 S.W.3d 72, 75 (Tex.App.-Dallas 2001, pet. denied). A "loss in progress" occurs when the insured is, or should be, aware of an ongoing progressive loss at the time the policy is purchased. *Scottsdale Ins. Co.*, 68 S.W.3d at 75.

The undisputed evidence presented at trial established that corrosion caused the building to collapse and that corrosion had occurred throughout the building for years prior to the collapse and for years prior to the issuance of the insurance policy that is the subject of this suit. Furthermore, the parties presented conflicting evidence as to whether appellee knew or should have known about the ongoing corrosion. Nevertheless, no instruction was submitted to the jury on principles of known loss or loss in progress. The trial court denied appellants' numerous requests for jury instructions, including appellants' proposed jury charge instructions on known loss and loss in progress principles.

Given that the jury was not instructed on the law of known loss or loss in progress, there is no basis for concluding that the jury considered the evidence and decided that appellee was not and should not have been aware of the corrosion before the policy was issued. The jury charge simply did not put that issue before the jury, and the jury could not have considered the issue without disobeying the jury charge's instruction that "in matters of

law, you must be governed by the instructions in this charge."

This presents something of an appellate quandary. As noted above, appellants' third issue was not briefed specifically as a legal sufficiency challenge, but it requested rendition of judgment in appellants' favor based on evidence that conclusively established appellants' entitlement to judgment as a matter of law. Although both points raised in appellants' third issue request relief consistent with a legal sufficiency challenge, the point regarding the fortuity doctrine cannot be properly treated as a legal sufficiency challenge. A challenge to the legal sufficiency of the evidence following a jury trial is a means of challenging the jury's verdict. Where, as here, the verdict was reached without determination of a controlling issue of fact, there is nothing for the appellate court to review on appeal. Having never been put to the jury for determination, the issue of whether appellee knew or should have known of the corrosion remains open and unanswered.

Thus, the only complaint that may be properly raised by appellants regarding the fortuity doctrine is that the trial court erred in failing to instruct the jury appropriately. This challenge is fairly raised in appellants' third issue, which includes a complaining that the trial court refused appellants' proposed instructions on the fortuity doctrine even though no objection was raised by appellee.

A trial court must submit "such instructions and definitions as shall be proper to enable the jury to render a verdict." TEX.R. CIV. P. 277. A party is entitled to a jury question, instruction, or definition if the pleadings and evidence raise an issue. TEX.R. CIV. P. 278. An instruction is proper if it (1) assists the jury, (2) accurately states the law, and (3) finds support in the pleadings and evidence. TEX.R. CIV. P. 278; *see also Texas Workers' Comp. Ins.*

*Fund v. Mandlbauer*, 34 S.W.3d 909, 912 (Tex.2000). Failure to submit an instruction shall not be deemed a ground for reversal of the judgment unless a substantially correct instruction has been requested in writing and tendered by the party complaining of the judgment. *Union Pac. R.R. Co. v. Williams*, 85 S.W.3d 162, 166 (Tex.2002); *see also* TEX.R. CIV. P. 278.

■■■ As noted above, appellants objected to the jury charge and the absence of an instruction on known loss and loss in progress. Appellants also submitted proposed instructions, which were denied by the trial court. This preserved error for appeal. *See State Dep't of Highways & Public Transp. v. Payne*, 838 S.W.2d 235, 241 (Tex.1992) ("There should be but one test for determining if a party has preserved error in the jury charge, and that is whether the party made the trial court aware of the complaint, timely and plainly, and obtained a ruling.").

■■■ We conclude that the evidence was disputed about whether appellee knew or should have known about the corrosion prior to issuance of the insurance policy. Because the evidence was disputed, the trial court erred in refusing appellants' proposed instruction on the fortuity doctrine. *See Union Pac.*, 85 S.W.3d at 171. We further conclude that the error probably led to the rendition of an improper judgment, as it allowed the jury to reach a verdict without consideration of a defense that was plead, argued, and supported by evidence at trial. *See* TEX.R.APP. P. 44.1(a); *Union Pac.*, 85 S.W.3d at 171; *Triplex Communications, Inc. v. Riley*, 900 S.W.2d 716, 718 (Tex.1995) ("If an issue is properly pleaded and is supported by some evidence, a litigant is entitled to have controlling questions submitted to the jury."); *Elbaor*, 845 S.W.2d at 243 ("[Rule 278] provides a substantive, non-discretionary directive to trial courts requiring them

to submit requested questions to the jury if the pleadings and any evidence support them."). Accordingly, appellants' third issue is sustained in part.[2]

## IV. Conclusion

The judgment of the trial court is reversed. The case is remanded to the trial court for further proceedings consistent with this opinion.

**2.** Because appellants' remaining issues would not entitle them to relief greater than what we have already granted in sustaining their third issue, we do not address them. Tex.R.App. P. 47.1.