NUMBER 13-05-031-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


CERTAIN UNDERWRITERS AT

LLOYD'S SUBSCRIBING TO

POLICY NO. WDO-10000, Appellants,


v.


KKM INC., D/B/A STRAND SURPLUS, Appellee

 


On appeal from the 212th District Court of Galveston County, Texas.


 


O P I N I O N



Before Justices Castillo, Garza, and Wittig (1)


Opinion by Justice Garza
 

This appeal from a final judgment involves an insurance claim for a building that
collapsed on June 6, 2002. Appellee was the owner of the building at the time of the
collapse and had owned the building since 1979. In 2001, appellee purchased a one-year
insurance policy from appellants. When the building collapsed less than one year later,
appellee submitted a property loss notice to appellants. Appellants subsequently denied
coverage for the claim and filed an action for declaratory judgment, requesting that the trial
court declare, among other things, that they have no obligation to pay appellee's claim. 
Appellee responded to the lawsuit and filed counterclaims against appellants for breach
of contract and violations of the Texas Deceptive Trade Practices Act. The trial court found
that the terms of the policy were ambiguous, and the issue of policy coverage was
submitted to the jury. The jury found that appellee was entitled to coverage and awarded
money damages. A final judgment was entered on the verdict, and appellants now raise
nine issues on appeal. We reverse the judgment and remand the case for further
proceedings consistent with this opinion. 

I. Waiver of Claim for Breach of Contract

In their first and fourth issues, appellants contend that "[t]he trial court erred
because . . . [appellee] failed to request and obtain findings on causation." According to
appellants, appellee "waived its right to recover" for breach of contract. See Tex. R. Civ.
P. 279 ("Upon appeal all independent grounds of recovery or of defense not conclusively
established under the evidence and no element of which is submitted or requested are
waived."). We disagree. 

As a breach-of-contract claimant, appellee had the burden to ensure that all
essential elements of its cause of action were submitted to the jury. Cameron County v.
Velasquez, 668 S.W.2d 776, 781 (Tex. App.-Corpus Christi 1984, writ ref'd n.r.e.). A
claimant in an action for breach of contract must show the existence of a contract between
the parties, that the contract created duties, that a breach of the duties occurred, and that
the party sustained damages. City of Corpus Christi v. Bayfront Assocs, Ltd., 814 S.W.2d
98, 103 (Tex. App.-Corpus Christi 1991, writ denied); see also Solis v. Evins, 951 S.W.2d
44, 50 n.3 (Tex. App.-Corpus Christi 1997) (orig. proceeding). The parties' live pleadings
and the evidence and arguments presented at trial all pertained to a controversy as to
whether and to what extent insurance policy coverage applied to the collapse of the
building. In both their live petition for declaratory judgment and live answer to appellee's
counterclaims, appellants acknowledged the existence of a binding contract for insurance
coverage, but maintained that no coverage applied to appellee's claim.

Our rules of civil procedure provide that "[i]n all jury cases the court shall, whenever
feasible, submit the cause upon broad-form questions." Tex. R. Civ. P. 277. Whether a
granulated or broad-form charge is submitted, the trial court's duty is to submit only those
questions, instructions, and definitions raised by the pleadings and the evidence. Harris
County v. Smith, 96 S.W.3d 230, 236 (Tex. 2002); Elbaor v. Smith, 845 S.W.2d 240, 243
(Tex. 1992); see also Tex. R. Civ. P. 278. The Texas Pattern Jury Charge offers the
following example of an acceptable broad-form jury charge on a claim for breach of
contract:

QUESTION _____


Did Don Davis fail to comply with the agreement?


[Insert instructions, if appropriate.]


ANSWER: _______


The jury charge submitted by the trial court in this cases includied the following
questions: 


QUESTION NUMBER 1


UNDER THE INSURANCE POLICY IN QUESTION:


Do you find, based upon a preponderance of the evidence, that KKM, Inc.
d/b/a Strand Surplus, should recover against Certain Underwriters of Lloyd's
London Subscribing to Policy WDO-10000? 


ANSWER "Yes" or "No".


 ANSWER: "Yes".



QUESTION NUMBER 2


EXTENT OF COVERAGE


Do you find, based upon a preponderance of the evidence that KKM, Inc.
d/b/a Strand Surplus' coverage under the insurance policy in question should
be limited to the part of the building which actually fell to the ground, or that
coverage should extend to all damages and losses caused by the collapse?


ANSWER "A" or "B" below:


A. Limited to the part of the building which actually fell to the ground.


B. Coverage should extend to all damages and losses caused by the
collapse. 


ANSWER: "B".


 The jury's answers to the foregoing questions established appellants' liability for
breach of contract. The jury also answered questions on damages, which were
incorporated into the trial court's final judgment. Given these findings, we disagree with
appellants' contention that appellee "waived its right to recover" for breach of contract. See
Tex. R. Civ. P. 279. Based on the pleadings, evidence, arguments, and final judgment
issued by the trial court, we conclude that appellee did not waive its claim for breach of
contract. This conclusion is supported by the jury charge, which submitted to the jury
questions to establish or negate the essential elements of appellee's cause of action for
breach of contract: namely, the existence of a valid insurance policy covering the denied
claim and entitlement to money damages on that claim. See Smith, 96 S.W.3d at 236; City
of Corpus Christi, 814 S.W.2d at 103. Accordingly, appellants' first and fourth issues are
overruled.

II. Ambiguity

In their second issue, appellants argue that "[t]he trial court erred in determining that
the terms 'corrosion' and 'decay' were synonymous or ambiguous." Appellants contend
that the policy language is unambiguous and should have been construed as a matter of
law against appellee's claim for coverage. They further contend that the trial court erred
in submitting a jury charge with an instruction on ambiguity because appellee never plead
ambiguity. According to appellants, "The application of the unambiguous exclusions for
corrosion bars recovery, and the judgment must be reversed and judgment rendered that
. . . [appellee] take nothing." See Universal Health Servs., Inc. v. Renaissance Women's
Group, P.A., 121 S.W.3d 742 (Tex. 2003) (holding that trial court erred in submitting jury
charge question on interpretation of unambiguous contract and rendering a take-nothing
judgment against claimants).

We begin with the general proposition, cited by appellants, that a party seeking to
establish ambiguity under a written contract must specifically plead such ambiguity. 
Crozier v. Horne Children Maint. & Educ. Trust, 597 S.W.2d 418, 421 (Tex. App.-San
Antonio 1980, writ ref'd n.r.e.); see also Modern Exploration, Inc. v. Maddison, 708 S.W.2d
872, 876 (Tex. App.-Corpus Christi 1986, no writ). Whether a contract is ambiguous is a
question of law for the court. Coker v. Coker, 650 S.W.2d 391, 394 (Tex. 1983). The
Texas Supreme Court has held that a court may conclude that a contract is ambiguous
even in the absence of such a pleading by either party. Sage St. Assocs. v. Northdale
Constr. Co., 863 S.W.2d 438, 445 (Tex. 1993); see also J.M. Davidson, Inc. v. Webster,
128 S.W.3d 223, 231 (Tex. 2003). Accordingly, the trial court did not err in ruling that the
contract was ambiguous merely because ambiguity was not plead. 

Next, we consider the relevant contractual language to determine whether the trial
court erred in concluding that the contract was ambiguous. In construing a contract, we
first determine whether it is possible to enforce the contract as written, without resort to
parol evidence. J.M. Davidson, Inc. v. Webster, 128 S.W.3d 223, 229 (Tex. 2003); see
also Harris v. Rowe, 593 S.W.2d 303, 306 (Tex. 1979). The primary concern of the court
is to ascertain the true intentions of the parties as expressed in the instrument. R & P
Enters. v. LaGuarta, Gavrel& Kirk, Inc., 596 S.W.2d 517, 518 (Tex. 1980); City of Pinehurst
v. Spooner Addition Water Co., 432 S.W.2d 515, 518 (Tex. 1968). To achieve this
objective, we must examine and consider the entire writing in an effort to harmonize and
give effect to all the provisions of the contract so that none will be rendered meaningless. 
Universal C.I.T. Credit Corp. v. Daniel, 243 S.W.2d 154, 158 (Tex. 1951). No single
provision taken alone will be given controlling effect; rather, all the provisions must be
considered with reference to the whole instrument. J.M. Davidson, Inc., 128 S.W.3d at 229;
Myers v. Gulf Coast Minerals Mgmt. Corp., 361 S.W.2d 193, 196 (Tex. 1962); Citizens Nat'l
Bank v. Tex. & P. Ry. Co., 150 S.W.2d 1003, 1006 (Tex. 1941). A contract is
unambiguous if it can be given a definite or certain legal meaning. Columbia Gas
Transmission Corp. v. New Ulm Gas, Ltd., 940 S.W.2d 587, 589 (Tex. 1996). Lack of
clarity does not create an ambiguity. Forbau v. Aetna Life Ins. Co., 876 S.W.2d 132, 134
(Tex. 1994). Not every difference in the interpretation of a contract amounts to an
ambiguity. See Universal Health Servs., Inc., 121 S.W.3d at 746. A contract is ambiguous
only if it is subject to two or more reasonable interpretations after applying the pertinent
rules of construction. Columbia Gas, 940 S.W.2d at 589; see also J.M. Davidson, Inc., 128
S.W.3d at 229. If a contract is ambiguous, a fact issue exists on the parties' intent that
may be properly submitted to the trier of fact. See J.M. Davidson, Inc., 128 S.W.3d at 229;
Universal Health, 121 S.W.3d at 746. 

 The controlling language of the policy involves two different provisions. They are
as follows: 


2. We will not pay for loss or damage caused by or resulting from any of the
following:


 d. (2) rust, corrosion, fungus, decay, decomposition, hidden or latent
defect or any quality in property that causes it to damage or destroy
itself.


* * *


2. We will pay for direct physical loss or damage to Covered Property,
caused by collapse of a building or any part of a building that is insured
under this Coverage Form or that contains Covered Property insured under
this Coverage Form, if the collapse is caused by one or more of the
following:


 * * *


 b. Decay that is hidden from view, unless the presence of such decay
is known to an insured prior to collapse; 


 The parties agree that the claim asserted by appellee involves a collapse caused
by corrosion. See Brief of Appellants p.1 ("The Collapse was caused by advanced
corrosion of the steel reinforcement of the concrete beams and columns."); Brief of
Appellee p.2 ("[E]veryone agreed upon 'causation' . . . that the collapse of June 6, 2002
was caused by corrosion."). The central dispute on liability concerned whether a collapse
caused by corrosion is a covered loss under the policy. We conclude that the contract is
ambiguous on that issue. 

 The parties have advanced different interpretations of the policy. Appellants
contend that the policy's use of the terms "rust, corrosion, fungus, decay, decomposition,
hidden or latent defect" demonstrates that the terms are each different and carry unique
individual meanings. Thus, rust is not corrosion, fungus is not decay, decomposition is not
a hidden defect, and so on. If each word were in fact different, then decay and corrosion
would not be the same and the policy's language allowing coverage for collapses caused
by hidden decay would not extend to collapses caused by corrosion. In contrast, appellee
contends that the policy is ambiguous because corrosion could mean decay, something
similar to decay, or something entirely different than decay. If decay can be read to include
corrosion or to be synonymous with corrosion, then appellee's claim would arguably be
covered by the provision for collapse caused by hidden decay. This is the conclusion
presumably reached by the jury, which found that the claim was covered. 

 We hold that the trial court did not err in submitting the issue to the jury. Contract
terms are given their plain, ordinary, and generally accepted meanings unless the contract
itself shows them to be used in a technical or different sense. Valence Operating Co. v.
Dorsett, 164 S.W.3d 656, 662 (Tex. 2005); Heritage Res., Inc.v. Nationsbank, 939 S.W.2d
118, 121 (Tex. 1996); W. Reserve Life Ins. Co. v. Meadows, 261 S.W.2d 554, 557 (Tex.
1953). In this case, the policy does not provide any special definitions of "corrosion" or
"decay." Accordingly, we give those terms their plain, ordinary, and generally accepted
meanings. See Valence Operating, 164 S.W.3d at 662; Heritage Res., 939 S.W.2d at 121;
W. Reserve Life, 261 S.W.2d at 557. Courts are allowed to use dictionaries in determining
a word's plain, ordinary, and generally accepted meaning. See Fiess v. State Farm Lloyds,
202 S.W.3d 744, 746 n.8 (Tex. 2006); Am. Mfrs. Mut. Ins. Co. v. Schaefer, 124 S.W.3d
154, 158-59 (Tex. 2003). Appellee argues that we cannot use a dictionary for this
purpose, but its contention is unsupported by the law. See Fiess, 202 S.W.3d at 750 n.29,
751 n.30; Am. Mfrs. Mut. Ins., 124 S.W.3d at 158-59. There would be significantly less
predictability in the application of contract construction principles if courts were barred from
looking to dictionaries in giving words their plain, ordinary, and generally accepted
meanings.

 Merriam Webster's Collegiate Dictionary (10th ed. 1996) provides the following
definitions for "corrode" and "decay":


Corrode: 1: to eat away by degrees as if by gnawing; esp: to wear away
gradually usu. by chemical action (the metal was corroded beyond repair);
2: to weaken or destroy gradually: undermine.


Decay: 1: to decline from a sound or prosperous condition; 2: to decrease
gradually in quantity, activity, or force; 3: to fall into ruin; 4: to decline in
health, strength, or vigor; 5. to undergo decomposition. 


 Notably, Webster's Dictionary lists "decompose," "rot," "putrefy," and "spoil" as
synonyms of "decay," but it does not include "corrode" as a synonym of "decay." In
distinguishing the subtle differences between the terms, Webster's Dictionary states that
"DECAY implies a slow change from a state of soundness or perfection (a decaying
mansion)." 

 In order to conclude that the trial court erred, we would have to hold that the policy
has a single definite or certain legal meaning. See Columbia Gas, 940 S.W.2d at 589. 
We would have to conclude that, as a matter of law, decay is not corrosion and vice versa. 
In our view, doing so would be ill-advised. The definitions quoted above do not support the
argument advanced by appellants that "corrode" applies to metal substances and "decay"
applies to organic matter. To the contrary, Webster's Dictionary uses a decaying mansion
as an example of the "slow change from a state of soundness or perfection" that is implied
by the word "decay." Thus, the words cannot be easily parsed into two categories, with
one applying to metals and the other applying to organic matter. 

 We are not persuaded that "to wear away gradually" is so distinct from "to decline
from a sound or prosperous condition" that the words "corrode" and "decay" are, as a
matter of law, different and that the relevant policy language is therefore capable of only
one interpretation. In overruling the issue, we note that appellants have not addressed the
Texas Supreme Court's precedent in McConnell Constr. Co. v. Ins. Co. of St. Louis, 428
S.W.2d 659, 661 (Tex. 1968). In McConnell, the Texas Supreme Court construed the
terms of an insurance policy and held that, as a matter of law, corrosion and contamination
were not synonymous. Id. In doing so, the court explained, "Corrosion . . . connotes
disintegration, oxidation, decay of metal and the like." Id. Based on McConnell and the
above-quoted definitions from Webster's Dictionary, we conclude that the meaning of the
policy was uncertain and that the issue was properly submitted to the jury. Appellants'
second issue is overruled. 

III. Legal Sufficiency Points

 In their third issue, appellants contend that "[t]he judgment should be reversed and
judgment rendered that [appellee] . . . take nothing because [appellee's] . . . claim was
excluded or not covered under the Policy as a matter of law." The issue is argued in two
points: (1) "the evidence conclusively established that the Collapse was caused by one or
more excluded causes of loss including rust, corrosion, the continuous or repeated
seepage or leakage of water over a period or 14 days or more, and faulty, inadequate or
defective maintenance"; and (2) "the evidence conclusively established that . . . [appellee's]
loss was ongoing at the inception of the Policy."

 These are legal sufficiency points, but they have not been expressly presented as
such. City of Keller v. Wilson, 168 S.W.3d 802, 814 (Tex. 2005) ("Texas courts conducting
a no-evidence review traditionally do not disregard contrary evidence that conclusively
establishes the opposite of a vital fact."). Appellants have not presented the standard of
review for a legal sufficiency challenge or identified their issues as legal sufficiency
challenges. Even though the standard of review for legal sufficiency challenges is well
settled and widely known, it should nonetheless be included in any appellate brief raising
a legal sufficiency point. This sharpens the issues on appeal and ensures that the parties
brief the reviewing court on controlling matters of law. Appellants' brief is inadequate in
this regard. See Tex. R. App. P. 38.1(h). Nevertheless, it is clear from the arguments
presented in the brief that appellants challenge the legal sufficiency of the evidence to
support the jury's finding that appellee was entitled to recover on the policy. Because
appellants' brief is otherwise adequate to present the issues raised, we proceed to the
merits of those issues without condoning the manner in which they have been presented.

A. Standard of Review 

 In conducting a legal sufficiency review, we credit evidence supporting the judgment
if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could
not. City of Keller, 168 S.W.3d at 827. We will sustain a legal sufficiency, or no-evidence,
point if the record reveals one of the following: (1) the complete absence of a vital fact; (2)
the court is barred by rules of law or of evidence from giving weight to the only evidence
offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than
a scintilla; or (4) the evidence established conclusively the opposite of the vital fact. See
Uniroyal Goodrich Tire Co. v. Martinez, 977 S.W.2d 328, 334 (Tex. 1998). If more than a
scintilla of evidence exists, it is legally sufficient. Lee Lewis Constr. Co. v. Harrison, 70
S.W.3d 778, 782 (Tex. 2001). More than a scintilla of evidence exists if the evidence
furnishes some reasonable basis for differing conclusions by reasonable minds about a
vital fact's existence. Id. at 782-83.

B. Applicability of Policy Exclusions 

 Appellants contend that "the evidence conclusively established that the Collapse
was caused by one or more excluded causes of loss including rust, corrosion, the
continuous or repeated seepage or leakage of water over a period or 14 days or more, and
faulty, inadequate or defective maintenance." 

 Evidence is conclusive only if reasonable people could not differ in their conclusions,
a matter that depends on the facts of each case. City of Keller, 168 S.W.3d at 816. In this
case, the insurance policy excludes from coverage specific types of losses, some of which
we have already detailed in the analysis above. For instance, the policy specifically
excludes from coverage losses caused by "rust, corrosion, fungus, decay, decomposition,
hidden or latent defect or any quality in property that causes it to damage or destroy itself." 
The policy also excludes losses caused by "continuous or repeated seepage or leakage
of water over a period or 14 days or more" and losses caused by "faulty, inadequate or
defective maintenance." Despite these exclusions, the policy includes the following
provision:


D. Additional Coverage - Collapse


The term Covered Cause of Loss includes Additional Coverage - Collapse
as described and limited in D.1. through D.5. below:


* * *


2. We will pay for direct physical loss or damage to Covered Property,
caused by collapse of a building or any part of a building that is insured
under this Coverage Form or that contains Covered Property insured under
this Coverage Form, if the collapse is caused by one or more of the
following:


* * * 


b. Decay that is hidden from view, unless the presence of such decay is
known to an insured prior to collapse. 


 The controlling question presented in this issue is whether the foregoing provision
for "Additional Coverage" trumps the exclusions relied upon by appellants. In our analysis
of appellants' second issue, we concluded that, as used in the policy, the terms "corrode"
and "decay" were ambiguous. In doing so, we specifically referenced one of the exclusions
now relied upon by appellants, namely, the exclusion for losses caused by "rust, corrosion,
fungus, decay, decomposition, hidden or latent defect or any quality in property that causes
it to damage or destroy itself." The conflict between the provisions in that instance was
obvious. The exclusion barred recovery for damage or loss caused by "decay," whereas
the "Additional Coverage" provision specifically allowed recovery for "collapse . . . caused
by . . . decay that is hidden from view." The parties' arguments as to their respective
interpretations of the two seemingly inconsistent provisions acknowledged that the
provision for "Additional Coverage" was effective and trumped the exclusion for damage
or loss caused by "decay." We now conclude that the same is true for the other exclusions
relied upon by appellants. The provision for "Additional Coverage" is not subject to the
exclusions relied upon by appellants but is rather a separate provision that supplements
coverage already subject to the exclusions. In other words, the "Additional Coverage"
provision supplements the coverage otherwise provided, extending it beyond the carved
out exclusions. This is most obvious as coverage relates to "decay," but it holds true for
the other exclusions as well. For this reason, we need not address whether the evidence
conclusively established that the collapse was caused by an excluded cause. Even if it
were conclusively established that one of the excluded causes, such as "decay," caused
the collapse, appellants would nevertheless have to establish that the evidence was legally
insufficient to prove that the collapse was "caused by . . . decay that is hidden from view." 
This they have not done, nor have they attempted to do so on appeal. Accordingly, the
first point raised in appellants' third issue is overruled. 

C. Fortuity Doctrine

 In the second point of their third issue, appellants argue that the trial court erred in
not rendering a take-nothing judgment against appellee based on the fortuity doctrine. The
fortuity doctrine as a bar to recovery was raised with detailed allegations in appellants'
pleadings. The trial court denied appellants' request for a jury instruction on the fortuity
doctrine. We sustain appellants' third issue as it relates to the fortuity doctrine.

 Generally, fortuity is an inherent requirement of all risk insurance policies. Two
Pesos v. Gulf Ins. Co., 901 S.W.2d 495, 501 (Tex. App.--Houston [14th Dist.] 1995, no
writ); Miles v. Royal Indem. Co., 589 S.W.2d 725, 729 (Tex. Civ. App.--Corpus Christi
1979, writ ref'd n.r.e.); Brownsville Fabrics, Inc. v. Gulf Ins. Co., 550 S.W.2d 332, 336-37
(Tex. Civ. App.--Corpus Christi 1977, writ ref'd n.r.e.). As the Fourteenth Court of Appeals
has noted, "The concept of insurance is that the parties, in effect, wager against the
occurrence or non-occurrence of a specified event; the carrier insures against a risk, not
a certainty." Two Pesos, 901 S.W.2d at 501 (quoting Bartholomew v. Appalachian Ins.
Co., 655 F.2d 27, 29 (1st Cir. 1981)). The fortuity doctrine incorporates the "known loss"
and "loss in progress" principles. Id. These aspects of the fortuity doctrine focus on the
proposition that insurance coverage is precluded where the insured is, or should be, aware
of an ongoing progressive loss or known loss at the time the policy is purchased. Id. (citing
Inland Waters Pollution Control, Inc. v. Nat'l Union Fire Ins. Co., 997 F.2d 172, 175-77 (6th
Cir. 1993)). A "known loss" is a loss the insured knew had occurred prior to making the
insurance contract. See Burch v. Commonwealth Mut. Ins. Co., 450 S.W.2d 838, 840-41
(Tex. 1970); Scottsdale Ins. Co. v. Travis, 68 S.W.3d 72, 75 (Tex. App.--Dallas 2001, pet.
denied). A "loss in progress" occurs when the insured is, or should be, aware of an
ongoing progressive loss at the time the policy is purchased. Scottsdale Ins. Co., 68
S.W.3d at 75.

 The undisputed evidence presented at trial established that corrosion caused the
building to collapse and that corrosion had occurred throughout the building for years prior
to the collapse and for years prior to the issuance of the insurance policy that is the subject
of this suit. Furthermore, the parties presented conflicting evidence as to whether appellee
knew or should have known about the ongoing corrosion. Nevertheless, no instruction was
submitted to the jury on principles of known loss or loss in progress. The trial court denied
appellants' numerous requests for jury instructions, including appellants' proposed jury
charge instructions on known loss and loss in progress principles. 

 Given that the jury was not instructed on the law of known loss or loss in progress,
there is no basis for concluding that the jury considered the evidence and decided that
appellee was not and should not have been aware of the corrosion before the policy was
issued. The jury charge simply did not put that issue before the jury, and the jury could not
have considered the issue without disobeying the jury charge's instruction that "in matters
of law, you must be governed by the instructions in this charge." 

 This presents something of an appellate quandary. As noted above, appellants'
third issue was not briefed specifically as a legal sufficiency challenge, but it requested
rendition of judgment in appellants' favor based on evidence that conclusively established
appellants' entitlement to judgment as a matter of law. Although both points raised in
appellants' third issue request relief consistent with a legal sufficiency challenge, the point
regarding the fortuity doctrine cannot be properly treated as a legal sufficiency challenge. 
A challenge to the legal sufficiency of the evidence following a jury trial is a means of
challenging the jury's verdict. Where, as here, the verdict was reached without
determination of a controlling issue of fact, there is nothing for the appellate court to review
on appeal. Having never been put to the jury for determination, the issue of whether
appellee knew or should have known of the corrosion remains open and unanswered. 

 Thus, the only complaint that may be properly raised by appellants regarding the
fortuity doctrine is that the trial court erred in failing to instruct the jury appropriately. This
challenge is fairly raised in appellants' third issue, which includes a footnote complaining
that the trial court refused appellants' proposed instructions on the fortuity doctrine even
though no objection was raised by appellee. 

 A trial court must submit "such instructions and definitions as shall be proper to
enable the jury to render a verdict." Tex. R. Civ. P. 277. A party is entitled to a jury
question, instruction, or definition if the pleadings and evidence raise an issue. Tex. R. Civ.
P. 278. An instruction is proper if it (1) assists the jury, (2) accurately states the law, and
(3) finds support in the pleadings and evidence. Tex. R. Civ. P. 278; see also Texas
Workers' Comp. Ins. Fund v. Mandlbauer, 34 S.W.3d 909, 912 (Tex. 2000). Failure to
submit an instruction shall not be deemed a ground for reversal of the judgment unless a
substantially correct instruction has been requested in writing and tendered by the party
complaining of the judgment. Union Pac. R.R. Co. v. Williams, 85 S.W.3d 162, 166 (Tex.
2002); see also Tex. R. Civ. P. 278. 

 As noted above, appellants objected to the jury charge and the absence of an
instruction on known loss and loss in progress. Appellants also submitted proposed
instructions, which were denied by the trial court. This preserved error for appeal. See
State Dep't of Highways & Public Transp. v. Payne, 838 S.W.2d 235, 241 (Tex. 1992)
("There should be but one test for determining if a party has preserved error in the jury
charge, and that is whether the party made the trial court aware of the complaint, timely
and plainly, and obtained a ruling.").

 We conclude that the evidence was disputed about whether appellee knew or
should have known about the corrosion prior to issuance of the insurance policy. Because
the evidence was disputed, the trial court erred in refusing appellants' proposed instruction
on the fortuity doctrine. See Union Pac., 85 S.W.3d at 171. We further conclude that the
error probably led to the rendition of an improper judgment, as it allowed the jury to reach
a verdict without consideration of a defense that was plead, argued, and supported by
evidence at trial. See Tex. R. App. P. 44.1(a); Union Pac., 85 S.W.3d at 171; Triplex
Communications, Inc. v. Riley, 900 S.W.2d 716, 718 (Tex. 1995) ("If an issue is properly
pleaded and is supported by some evidence, a litigant is entitled to have controlling
questions submitted to the jury."); Elbaor, 845 S.W.2d at 243 ("[Rule 278] provides a
substantive, non-discretionary directive to trial courts requiring them to submit requested
questions to the jury if the pleadings and any evidence support them."). Accordingly,
appellants' third issue is sustained in part. (2)

IV. Conclusion 

 The judgment of the trial court is reversed. The case is remanded to the trial court
for further proceedings consistent with this opinion. 

 


 


 DORI CONTRERAS GARZA,

 Justice


Opinion delivered and filed this 

the 28th day of December, 2006.
1. Retired Justice Don Wittig assigned to this Court by the Chief Justice of the Supreme Court of Texas
pursuant to Tex. Gov't Code Ann. § 74.003 (Vernon Supp. 2004).
2. Because appellants' remaining issues would not entitle them to relief greater than what we have
already granted in sustaining their third issue, we do not address them. Tex. R. App. P. 47.1.